14-22-014, people of the state of Illinois, Plainton, Appalooney, v. Vazquez, defendant, appellant. Are you in on behalf of the defendant's appellant, attorney Mr. John E. Miller? Are you in on behalf of the Plainton Appalooney, attorney Mr. Colin Appadise? Mr. Miller? And I suppose I should say good morning. Two of the three of us are new to the courtroom this morning, so good morning. Good morning. Good morning. May it please the court, counsel, Darren Miller on behalf of the appellant, William Vazquez. Your honors, after a second jury trial, Mr. Vazquez was found not guilty of harboring a runaway, but guilty of contributing to the delinquency of a minor. We're here to ask that this court find the plain error occurred because the jury was improperly tendered other crimes evidence, and given what occurred with the other crimes evidence, the instructions were also improper. Why didn't the other crimes evidence explain anything or clarify anything about the charges that were pending? Well, the state on appeal claims that the other crimes evidence could be admissible or was admissible for the context of the relationship, but the state never used it for that purpose. And if you look at what actually occurred at trial, the state's position at trial was that the other crimes evidence, being the tendering of the minor's cigarettes and giving the minor marijuana and sending the minor every Friday, I believe was testimony to a drug dealer to purchase marijuana, none of that was alleged. And the state argued, in fact, in their closing argument, they specifically argued that that evidence of the marijuana and the cigarettes was evidence of the delinquency. And essentially, they argued that the jury could find the defendant guilty on the uncharged conduct. So I think when you're looking at that context of the relationship argument, that's just kind of after the fact, trying to pigeonhole. Was the contributing charge actually related to that party that occurred? Is that how the contributing charge came about, where there was a noise complaint and then the police came and there was alcohol involved? Or was it generally alleged throughout the relationship between the parties? If you look at the complaint, and I have a copy of it here, they alleged three ways that the defendant contributed to the minor's delinquency. And our position is in the case law states, and I don't think the state even disputes that the contributing to delinquency minor statute, you have to specifically allege what conduct the defendant contributed to. So they alleged three things here. First, that the defendant allowed access to his residence while BP was chewing from school. And our position is they didn't prove obtruancy at all. Second, that he allowed the minor to have access to a Dodge Ram. And third, provided alcohol to the minor. That's it. But the alcohol comes from that party where the police came because of a noise complaint, correct? Yeah, I believe there was a party, and I believe the testimony was that Mr. Vasquez was not present at the party. And I believe the evidence also was that he was not present for the accident with the Dodge Ram. But he went to the court appearance with him? Yeah, after the fact. Now, your client testified that he did not have knowledge of the use of the car, did not have knowledge of the alcohol. He didn't supply the alcohol, didn't have knowledge of the alcohol, correct? Correct. So wouldn't this other crimes evidence go to knowledge? I mean, I understand the state argued it differently. I know that's your position. But just talking about the admissibility of the other crimes evidence, wouldn't it go toward knowledge and intent? I don't think so, Your Honor. The state alleges three separate acts, the truancy, the alcohol, and the driving of the car. I believe that, for example, when the other crimes evidence of giving the cigarettes, that occurred at least in part when they first met at a bus stop, when they first met. And I think also critical here is that Mr. Vasquez actually acknowledged that he gave the minor cigarettes, which is another huge problem with this case, is that the only of the three charged violations and the three uncharged violations, the only one where there's undisputed evidence is the uncharged violation. So there's a very good possibility that the jury found him guilty or certainly could have found him guilty just merely for giving him the cigarettes on the uncharged offense. And that's the problem that we have with this case. So, I mean, I think there's clearly error because, again, the state never even moved to admit this for the context of the relationship. If they wished to have done so, they should have told the jury, hey, we're putting in this evidence, this highly prejudicial evidence of other crimes, but we're not putting it in so you can find him guilty of those offenses. We're putting this in to explain the context of the relationship. And they did not do that. So from the jury's perspective, they're essentially told, hey, go ahead. You're free to find the defendant guilty on either the three charged violations or the three uncharged violations. Of course, the defendant didn't object to any of this. Correct. And that's why he was pro se. Would you kind of do what you pay for when you represent yourself? Sure. I mean, to some extent. But then again, there's some errors that are just so serious that just can't be tolerated. And that's why plain error exists. In our position, there's plain error for two reasons. First, it's just a serious violation that is a substantial defect in the jury instructions. When you're essentially instructing the jury, and when you look at the context of how they were instructed, the court essentially instructed the jury that they could find Mr. Vasquez guilty on the uncharged offenses or violations. And our position is that's a substantial defect. But even if you don't consider that to be a substantial defect, this is a closely balanced case. This is just a case of credibility. It's word versus word. Again, and we're talking about the three charged instances of the conduct. And for the truancy, there is no – truancy is a very specific crime. I forget, it's 10% of the – missing 10% of classes within 180 days. The jury was given no instruction or definition as to what truancy even is. There is no evidence that the minor was absent more than 10% of those days. Do we know which school he was allegedly truant from since we have a change in school?  Some place in the middle? Well, that's another thing. The names of the schools escape me, but the minor said that I believe his testimony was he switched schools and then he was out of school after that. And he switched schools sometime, I believe, in October. But then when his dad testified that he was called to pick up a cell phone, I believe it was December, a month or two later, he testified that he went and met the minor at the original school. So right there undermines the minor's credibility. The minor made certain allegations in his affidavit for the guardianship, testified contrary to that. So clearly he was either – he lied under oath one of the two times. And a rational jury did not have to believe the minor. Certainly rational jury could have believed the minor, but it's these types of instances where it's a closely balanced case where it's up to the jury to determine who's the credible witness. Do we know if he ever went to the other school? If he ever went to the school he allegedly transferred to? I believe, if my memory serves me correctly, that at some point when there was an issue that the guardianship went to Mr. Vasquez or that was an issue, I believe at some point he was going to that other school. I think at some point he did go, but again, the minor's testimony about when he went was contradicted by his own father. So again, our position, there's a plain error to the serious nature of basically allowing the jury and actually instructing the jury that it could find Mr. Vasquez guilty on uncharged conduct. I just wanted to touch briefly on the remedy because we're asking for an unusual remedy, which we also asked for during Mr. Vasquez's first appeal, and that's just for a flat reversal. One thing that I noticed while working on this case and preparing for the oral argument is that Mr. Vasquez was originally sentenced to 180 days jail and two years probation. That is the maximum sentence you can get for misdemeanor. You can get 364 days if you're just given straight jail, but when you're working in order with either conditional discharge or probation, the maximum jail is 180. So not only did he serve his whole sentence before even the previous appeal, but he served the maximum permissible sentence allowed by law for classic misdemeanor. When that conviction is vacated, then he's subject to resentencing, or he's subject to sentencing again if he's convicted again, and then he can be resentenced to a greater sentence if there's evidence that something happened in the interim, correct? No. So you're telling me that if somebody commits a crime, is sentenced, and then that's reversed, goes back for a new trial, in the interim commits a murder, they can't use that murder in aggravation if he's convicted again and resentenced. Especially here, Your Honor, because as I pointed out, he already got the maximum sentence. No, no, no, it's not the maximum sentence because the maximum is 180 days with probation, but it's 365 days without probation. So you can theoretically get a year's sentence without probation, correct? In theory you could, but the problem here is that he didn't. He served his entire maximum sentence. You can't have someone serve an entire maximum sentence, send them back, and then tack more time on to a maximum-served sentence. I mean, I guess that's arguable as to whether or not it's the maximum, if you can legally get a year in jail without probation. Well, I don't think that it is really arguable. I did misdemeanors way back in the day, and it's pretty routine whenever, and I would think that misdemeanor attorneys from both the state and the defense would know this, as well as the misdemeanor judge, that it's routine, 180 days maximum, when you're putting someone on probation or conditional discharge. I know that's what the statute says. I understand that. The question is, could someone without probation get 365 days? Sure. 365 days. Without probation. Without probation. But he did have probation. He served his full sentence. I know, but again, that's now wiped clean. The conviction is vacated. The sentence is vacated. He goes back to court. He's not convicted. He stands presumed innocent of that charge until he's convicted again. If he is convicted again, then he's subject to being sentenced for that charge. That sentence is gone. Now, certainly, he's got to get credit for it. I understand that. Well, and that's our position, that if you have to give him credit for serving a maximum sentence, if you have to give him credit for that, there's nothing you can give him on top of that. Well, I mean, we could argue about this all day, I guess. So. Did he get credit for the sentence? I mean, if, assuming that you and Justice Berger aren't going to argue anymore about that particular point, in the second proceedings, did he get any credit? Actually, the state argued that he shouldn't have gotten any credit. Correct. The judge did properly give him credit, but improperly award him more time. And I think even the judge kind of realized the error because once the public defender stepped in on a motion to reconsider, the judge let him go. And he pointed, I believe they directed him to the language of this court, and Justice McClaren's concurring opinion from the first decision, where he was concerned and specifically stated that, were the defendant convicted after a new trial, the trial court may only sentence the defendant up to the same sentence imposed before, and then declared satisfied with discharge. And he cited double jeopardy principles. Did you ever think there's a reason that's in the special writing? Sure. The two of us didn't agree to that? Sure. I mean, that's, you know. I'm sorry, may I continue? Yes. Yeah, I mean, I'm not arguing that that's necessarily the law, but our position originally was that it's Campbell. And that we consider Campbell as far as whether it's equitable and productive when we're on a class A misdemeanor. Either way, the state doesn't argue on appeal against your position, correct? Correct. So that would be one. So as I'm out of time, unless there's any further questions, I'll allow the state to argue. Thank you. Thank you. Mr. Diamond. Good morning. Good morning. Thank you. May it please the court, counsel, my name is Collin Diamond, and I represent the appellee in this case. We would submit that there was no plain error in this case, that the acts went to the context of the relationship. And that was how the perspective of the relationship from the victim BP in this case. I mean, why weren't they charged? Because they apparently were easily proven. I mean, if that's part of the relationship, why weren't they added to the contributing to the delinquency? We set out from the beginning in terms of what were the acts. We set out the alcohol, we set out the driving without a valid license, and the truancy. These acts were from the perspective of BP when he testified. This was the nature of the relationship. This was the context. This is what was happening. This was escalation, a grooming process where slowly these acts from which the delinquency arose eventually were revealed. That eventually he became, he was drinking underage, he wasn't going to school, he was driving without a valid license. It was a slippery slope. The cigarettes itself explained how he met the defendant to begin with. He was at a station in Bensonville. The marijuana itself shows that eventually, hey, he was offered marijuana, he was offered things that his own father would never offer. It was a completely separate relationship. And eventually this relationship with the defendant caused him to leave home and become a defendant while being truant from school, drive his car, drink underage. Where was he truant from? Morton East High School. Did he ever transfer to the other high school? He testified to transfer to the other high school. What? That's the evidence we have. Assuming the acts were properly admitted, the other crimes acts, did the state argue at trial that these other crimes were proof of the commission of the contributing? No. In the closing argument by counsel, she states what the acts were that caused the defendant to be delinquent. On page 1543, she says he got tickets for drinking, he got arrested for driving without a driver's license. She very clearly states she defines what contributing to the delinquency of a minor statute is. She defines what a delinquent child is and she sets forth the acts. She doesn't say convict him because he was smoking cigarettes or convict him because he was smoking marijuana and the defendant directed him to get marijuana. She states specifically what the delinquents acts were in the closing argument. But there was no instruction that limited that evidence in any way, correct? No. And why might that not have been presented? There was no objection judged at that point. It was only brought up once. It was by the it was brought up by in passing at the end of the closing argument. It was brought up in the testimony of BP. It was mentioned briefly in the testimony of the defendant. But this was not something that was prevalent throughout the entire trial. Mr. Benjamin, whose responsibility is to make sure the jury is properly instructed? It's on the parties. How about the court? Isn't it ultimately the trial court's obligation? Ultimately, the trial court makes the decision on what how the jury is instructed. But it's up to the parties and not the court to tender the jury instructions that the court is supposed to take. And the state did not feel it was appropriate to bring in other crimes, evidence, and then tender an instruction? No. Okay. And was that because during the course of presenting the evidence there wasn't an instruction or just because it wasn't convenient? It was in passing. This wasn't something that we were asking the defendant to be convicted of. It just went from the perspective of BP at that time. The fact that he saw this, this was just a relationship. This was the relationship between him and the defendant. This wasn't something that was just ignorance on behalf of the defendant. This was something that was actively going on. This was him. And then how this conduct, this delinquent conduct, the drinking, the driving, being churned from school, it rose. When you used the word grooming here today, was that word used in the argument of counsel at trial? That this was all part of the grooming of the young man? No, it was not. But it explained, it showed the escalation throughout trial, that this went from meeting at a train station, smoking cigarettes, to eventually driving a car without a license, to being churned from school, and to drinking underage. So it was a slow escalation, gradual escalation over the summer months until November when he's completely dropped out of school altogether. But he's going home certain times during that period of time. He's staying with his father and then seeing maybe the defendant during the day or whenever it was convenient, correct? Correct. So you seem to make a point that this was important that they met at a train station and he offered them, offered him these cigarettes. Is there something magical about that location or that's just the fact here? In the trial, he met the defendant at the train station and he was working a summer job in Bensonville. BP, the victim in this case, was originally from Cicero. He was from an entirely different county. He meets the defendant, first his approach, offered cigarettes, offered a job, he ignores him, and then eventually he does accept that job when he sees him at the train station again sometime in the summer of 2005. And then after that, it's just a load of more things. He's offered marijuana and then eventually he's offered all this freedom to do whatever he wants in the words of BP. So he eventually leaves his father altogether in November and he's truant from school and he's disappeared. So that just shows how he's able to draw the BP, the victim in this case, into his home and BP eventually leaves Morton East High School. He leaves his home in Cicero altogether. The state defined delinquency or identified delinquency. Did the state ever define or otherwise perfect a definition of truancy? Or was it simply he didn't go to school, therefore he's truant? I don't believe they did, but the argument was not reasonable doubt at this point, Judge, in the opening brief. It wasn't reasonable doubt. I think that the testimony in itself was that from BP that I didn't go to school and that he, you know, transferred a fine and he wasn't going to Morton East. Well, truant is a legal standard and not going to school is, as I think the trial judge said, maybe reprehensible, but is that not going to school alone proof of truancy? I believe after a while, yes, it is. But did we ever prove that while? Was the jury ever told you have to be out for 10 solid days or, as Mr. Miller said, 10% of the time or 20% of the time, or it was just, well, I didn't go to school? Well, delinquent trial is an attempt to violate love of the Lord, and so truancy is an attempt to violate. So if he's not going to school, regardless of the amount of days, that's an attempt to be truant from school as well. So if he let him stay home one day, that fits the bill for you? The test, I believe here, was more than one day. This doesn't state, I don't believe there was an exact number of days that was stated throughout the trial, but it was over time. BP himself said he assured me that I would be financially stable if I dropped out of school altogether, and in his own words, I dropped out of school. So soon that was more than one day. It wasn't just one day that he was gone. You argue this other crime's evidence is to show the nature of the ongoing relationship between these two, and I'm not aware of any case law outside of the realm of sex offenses, especially child sex offenses, that apply other crime's evidence for this purpose. Do you know of any cases? I know you cited Thompson, which is a continuing narrative case. It's a battery case. But are you aware of any cases about this ongoing relationship for use of other crimes? Not specifically. I did cite Thompson, and it explains how the conduct arose. In terms of that, that's what we stress in this, is that this explains how these delinquent conducts just arose, how he ended up being at this defendant's house in an entirely different county, an entirely different town, and how he's drinking at the house, how he's driving this individual's car who his family didn't know, who he wasn't a neighbor, wasn't a relative, wasn't a family friend, and just that this other stuff shows that the cigarette shows how he needs them. The marijuana explains how eventually he ends up committing this conduct because he's offered these freedoms that he didn't have before. But doesn't that go then to show more than just the relationship? It shows that these were also offenses that could have, and under the circumstances maybe should have, been charged. I mean, the evidence could have been we met at the train station. Then he gave me his phone number. Then a couple months later we met again. End of discussion. Then I called him back. Why is it so compelling to say it was, he only called, and that's what it sounds like, he only called him back because he was giving him cigarettes. He called him back, I thought, because he offered him a job after his job wherever he was working ended. And so he decided to take it because he didn't have that other job. I think that the evidence explains that it was more than just a job offer. He initially refuses it. Because he had a job. I think necessarily that he refused it because he sees him again. That's when he goes back to the job. He doesn't call him at all. In fact, he doesn't call him until he sees him again at the train station. Is the defendant hanging around the train station looking for people to give this information and give these privileges to? Is that part of this offense? He is showing up and seeing BP and offering him cigarettes. And then all of a sudden he's offering him access to his car. He's offering him marijuana. He's offering him, he has this party at his house. This is something that his father, and he states, my father would never allow me to do this. Most fathers wouldn't. I mean, again, the charges were alcohol, truancy, and I can't remember. Driving. Okay, driving. It wasn't production or giving him other things or telling him to go to Chicago or wherever he was going to get the marijuana. So, I mean, that one especially. Well, after a while then he just told me to go. How does that in any way prove alcohol, truancy, or driving the car, other than he may have driven the car? It's just the relationship with something that was a toxic environment. That's how this conduct arose, that this was something that was available. This was something that caused him to, that caused BP to act in this way. You don't address remedy in the brief. Are you conceding that this case, should we find error, this case does not get remanded? Judge, we argue that we believe the conviction should be affirmed, and if the conviction is affirmed, we submit that the remedy issue itself is resolved. If this case does indeed, or this court does indeed find error, we say that the court did correct itself. And the motion to reconsider, it lowered the amount from 300 to 248 days. And even still, under the statute of 730 ILCS 5-5-4, you can get the more severe sentence. It allows for a more severe sentence if it is based on conduct that occurred after the original sentence. And in this case, counsel stated he had a battery after the conviction. He had a violation of the order of protection. And defended himself during sentencing, admitted, yes, I had a violation of order of protection. So that allows for a more severe sentence. So if there is a reversal at this point, you're saying the state's done, or the state's going, there's a remedy, or what? And what's the state's position? If there's a reversal. Reversal, yes. Well, obviously you won't do anything. But what if there's a reversal and a remand? I cannot predict what our office will do at that point. We may try the case. But all I can say is based on at this point in time, we ask that the conviction be affirmed. Thank you, Your Honor. And we ask that the conviction of the lower court be affirmed. And we ask for attorney's fees pursuant to People v. Nichols. Thank you. Thank you. Mr. Miller? Yes. I believe the state's argued that at trial they did not argue that the uncharged offenses for conduct should be considered to find Mr. Vasquez guilty. But if you look at Record 1543, and I'll just read from the state's argument, this is the state argument. A delinquent child is any minor who prior to his 17th birthday has violated or attempted to violate any federal, state, or municipal ordinance. And we know that happened multiple times while he was under the supervision of the defendant. He got tickets for drinking. He got arrested for driving without a driver's license with the defendant's permission in the defendant's vehicle. We know he committed multiple delinquent acts under the age of 18 while he was with the defendant. And the defendant encouraged that behavior. He bought him beer. He bought him marijuana. He bought him cigarettes. If that isn't arguing to consider the uncharged conduct, saying that the jury could find Mr. Vasquez guilty on the uncharged conduct, I don't know what is. The jury was instructed, as the state said, that a delinquent child is a minor who violates any statute or ordinance. And the state's arguing that Mr. Vasquez bought him marijuana, bought him cigarettes, and that's how he encouraged that behavior. And when you look at the instruction for contributing to the delinquency of a minor, a person commits the offense of contributing to the delinquency of a child when he normally or willfully aids, I'm sorry, causes aids or encourages a boy or girl to become delinquent. The state argued it. And for them to come here and to claim that it was some continuing narrative goes against everything that occurred at trial. The jury was not instructed in accordance with IPI 3.14 how to consider the other crimes evidence. If it was coming for continuing narrative, that instruction should have come in with it. And the state would have been arguing that this is part of continuing narrative, not to make finding guilty on that uncharged conduct. After the comment that you read in the record or from the record, is there anything that says and about the relationship between the parties? And ladies and gentlemen of the jury, you can see that this relationship was initiated by Mr. Vasquez. And these are the points of initiation. It's relationship mentioned anywhere. Not to my recollection. I'm not sure I was actually looking for that specific term, but I don't believe so. And clearly, when you look at the context of how this was presented to the jury and how the jury was instructed, you can reach the conclusion that the jury was told that they were free to find Mr. Vasquez guilty only on uncharged conduct. And they very well, considering that they could have found the minor not credible. In fact, they asked for the transcript in a written jury question of the minor's testimony, which was denied. But that shows that they were focusing on the minor's testimony. They found Mr. Vasquez not guilty of the harboring a runaway charge. He was contradicted by his own father. His testimony contradicted his own affidavit. And the only conduct that was, that a rational jury certainly could have found the cigarettes, giving the minor cigarettes, that's something that Mr. Vasquez admitted. So a jury could have been in the jury room and said, hey, well, we don't really believe anything that this kid's saying, but the defendant admitted that he gave him the cigarettes, so let's find him guilty. And a rational jury certainly could have gone through that analysis. Did they ever introduce the ticket for, the ticket that he got for that party in the underage drinking? I can't recall if the actual ticket was admitted or not. Or citation or whatever it happened to be. Yeah, I don't think it was really disputed that he was issued a ticket. The instructions in defining delinquency, or the issuer's instruction on delinquency, contributing, didn't set forth the delinquent acts that were in the complaint? Correct. So again, that would leave the jury free to find Mr. Vasquez guilty of the uncharged conduct. And that's the real problem here. I mean, had the state properly instructed the jury as to what it could have done if they were really doing some continued narrative, although we disagree that that's even proper, then they would have a better argument that that didn't even occur. So if there are no other questions, I ask that you reverse Mr. Vasquez's conviction. Thank you very much. Gentlemen, thank you for your arguments this morning. We will take this matter under advisement. This court will stand in recess until, I believe, 1 o'clock this afternoon. Thank you.